UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRENT RODGERS,                                    Case No. 1:11-cv-21

       Plaintiff,                                Spiegel, J.
                                                 Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Trent Rodgers filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

On July 14, 2005, Plaintiff filed an application for Supplemental Security Income (SSI), alleging a disability onset date of March 1, 1990 due to physical impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge  ("ALJ").  An administrative hearing was held on September 18, 2008.  (Tr. 28-57).  At the hearing, ALJ Thaddeus J. Armstead heard testimony from Plaintiff's counsel, Charles Metcalf, M.D., a medical

1

expert, and Eric Pruitt, an impartial vocational expert.[1] On October 24, 2008, the ALJ found that Plaintiff was under a disability as defined by the Social Security Act, from July 14, 2005 though September 29, 2006. (Tr. 20, 21). The ALJ further found that medical improvement occurred as of September 30, 2006, and Plaintiff was no longer under a disability as of that date. Thus, the ALJ found that Plaintiff was entitled to SSI benefits for a closed period from July 14, 2005 through September 29, 2006.

The record on which the ALJ's decision was based reflects that Plaintiff graduated from high school and has no past relevant work. (Tr. 20, 21). Plaintiff was born in 1960 and was 45 years old at the time his application was filed. Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "history of morbid obesity; mild degenerative disc disease of the spine; remote history of left shoulder fracture; and residuals of gastric bypass surgery with residual excess abdominal skin and infection, status-post surgery." (Tr. 18).

Despite these impairments, beginning on September 30, 2006, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, with the following exceptions:

> He can lift and carry 50 pounds occasionally and 25 pounds frequently; is limited to sitting, and standing/walking 6 hours each during an 8-hour day and requires the opportunity to sit or stand at will; he should not climb ladders, ropes, or scaffolding or reach overhead with the left upper extremity; and may occasionally kneel, crawl, crouch, stoop, perform other climbing, such as ramps and stairs; and may occasionally use foot pedals, leg controls, or similar controls involving lower extremities.

---

[1] Plaintiff did not appear at the hearing. According to his attorney, he was under doctor's orders not to leave the house except under limited circumstances until an infection on his abdomen resolved. (Tr. 15, 33).

(Tr. 22).  Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that beginning on September 30, 2006, "the claimant has been able to perform a significant number of jobs in the national economy," such as carton packaging machine operator, extractor machine operator, and textile inspector.  (Tr. 26).  Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI after September 29, 2006.  (Tr. 27).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff first argues that the ALJ erred by finding a medical improvement occurred on September 30, 2006, thereby establishing a closed period of disability from July 14, 2005 though September 29, 2006.  Plaintiff argues next that the ALJ erred in evaluating the opinion of his treating physician.  Finally, Plaintiff asserts that ALJ erred by relying on an improper hypothetical to the vocational expert that did not accurately portray Plaintiff's limitations.  As discussed below, the Court finds no error requiring reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

3

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner

4

determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Assignments of Errors**

*1. ALJ's disability determination and the weighing of the medical evidence*

Plaintiff statement of errors asserts primarily that the ALJ erred in finding Plaintiff was no longer under a disability beginning on September 30, 2006. Specifically, Plaintiff first assignment of error asserts that the ALJ erred in finding that Plaintiff impairments improved to the point where he was able to perform substantial gainful activity six months after having gastric bypass surgery. In making this determination, Plaintiff argues next that the ALJ erred in discounting the opinion of his treating physician. Accordingly, Plaintiff's first two assignments of error will be considered together. For the reasons that follow, the undersigned finds the ALJ's decision is substantially supported.

5

In March 2006, Plaintiff underwent gastric bypass surgery. At the time of the procedure, Plaintiff weighed over 450 pounds. Treatment notes from Dr. Schumacher, Plaintiff's bariatric surgeon, indicate that Plaintiff recovered well from surgery and was losing weight appropriately. Notably, in June 2006, Dr. Schumacher found that Plaintiff was "doing very well" with "no complaints" and "no issues." (Tr. 258). Dr. Schumacher further indicated that Plaintiff's activity level had "improved," and he was "able to walk much further now" and drive a car. (Tr. 258). Dr. Schumacher also noted that Plaintiff's laboratory results were within normal limits, but that his iron level would be more difficult to control as a result of the gastric bypass procedure. (Tr. 258). At a September 2006 follow-up visit with Dr. Schumacher, Plaintiff's "only complaint is that he is developing boils underneath his pannus." (Tr. 256). Plaintiff treated the boils with ointment and Neosporin. (Tr. 256). Dr. Schumacher recommended iron tablets and noted that Plaintiff was "doing well and losing weight appropriately." (Tr. 256).

Treatment notes from Dr. Schumacher from July 2008 indicate that Plaintiff has lost nearly 200 pounds and is "doing very well and has no complaints." (Tr. 302). Dr. Dr. Schumacher also noted that Plaintiff was severely iron depleted but that all other laboratory data was normal. Dr. Schumacher recommended that Plaintiff undergo a procedure (panniculectomy) to remove excess skin.[2]

The record also contains the treatment notes of Leah Avera, M.D., Plaintiff's family physician, from November 2004 to July 2007. In an April 2005 letter, Dr. Avera

---

[2] Plaintiff underwent abdominoplasty and panniculectomy in August 2008. (Tr. 286- 87). During his pre-operative physical examination, he reported fungal infections and rashes around the excessive skin. He also complained of joint pain and low back pain, which he believed resulted from his excessive skin. (Tr. 284). There were no complications during the procedure, and Plaintiff returned to postoperative recovery in good condition. (Tr. 287).

6

opined that Plaintiff was unable to work due to morbid obesity, diabetes, hypertension, osteoarthritis, and obstructive sleep apnea. (Tr. 166). Thereafter, in January 2007, Dr. Avera completed a physical residual functional capacity questionnaire. (Tr. 304-07). Dr. Avera indicated that Plaintiff had pain in his left hip, back, and ankles, which was worsened by activity or prolonged sitting and standing, and swelling in his ankles. (Tr. 304). Dr. Avera assigned sitting, standing, walking and other physical limitations that were incompatible with sustained work activity. She also indicated he would be absent from work more than four days per month. (Tr. 307). Dr. Avera noted that such limitations were applicable beginning in November 2004. (Tr. 307). In sum, Dr. Avera's 2007 assessment precluded all work activity.

As noted above, the ALJ found that Plaintiff was under a disability from July 14, 2005 through September 29, 2006. Beginning on September 30, 2006, the ALJ found that medical improvement occurred, and as a result, Plaintiff's impairment's did not prohibit him from engaging in sustained work activity. In reaching this conclusion, the ALJ relied heavily on the testimony of the medical expert, Dr. Metcalf. Notably, at the administrative hearing, Dr. Metcalf summarized the medical evidence from June 2005 through September 2008. (Tr. 37-38). Dr. Metcalf found that Plaintiff suffered from osteoarthritis that caused aching in his legs, knees, and back, but that the pain was "bothersome, but not disabling." (Tr. 39-40). Dr. Metcalf also found Dr. Avera's April 2005 disability assessment to be consistent with Plaintiff's morbid obesity at that time. However, Dr. Metcalf disagreed with the extreme limitations outlined in Dr. Avera's January 2007 assessment because, at that time, Plaintiff had lost over 100 pounds eliminating many, if not all, of his joint symptoms. (Tr. 43-44). Thus, based on the

evidence of record, Dr. Metcalf opined that six months after Plaintiff's gastric bypass surgery, Plaintiff's impairments would have greatly improved due to his weight loss. As such, he found that beginning on September 30, 2006, Plaintiff was capable of performing a range of medium work.

Plaintiff, however, maintains that he continued to have significant functional impairments beyond September 29, 2006. In support of this contention, Plaintiff argues that despite significant weight loss, his Body Mass Index ("BMI") remained in the obesity range and he continued to complain of shoulder, hip and ankle pain. Plaintiff also noted his recurrent skin infections and iron deficiencies. Contrary to Plaintiff's assertion, the ALJ's determination that Plaintiff was capable of gainful work activity six months after his gastric bypass procedure is supported by substantial evidence.

First, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Here, other than asserting that the record establishes that he complained of joint pain and suffered from obesity and iron deficiencies, Plaintiff does not offer any objective medical evidence establishing that his impairments resulted in any functional limitations or otherwise affected his ability to perform basic work activities after September 29, 2006. To the contrary, the evidence establishes that Plaintiff received excellent results his gastric bypass procedure. Dr. Schumacher's follow-up treatment notes consistently indicate that Plaintiff was doing well and losing weight. Notably, two years after the procedure, Dr. Schmacher indicated that Plaintiff "was doing well with no complaints" and his weight had decreased from 463 pounds to 296 pounds. (Tr. 302).

Furthermore, with respect to his reported iron deficiency, the record reveals that Plaintiff was prescribed medication and advised to take iron tablets. (Tr. 302). There is no indication from the record that Plaintiff's iron deficiency resulted in any functional limitations.[3] As Plaintiff has failed to offer any evidence that he suffered from disabling impairments after September 29, 2006, the undersigned finds that the ALJ's decision is substantially supported in this regard. *See* 20 C.F.R. § 404.1512(a) (Plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits).

Next, the ALJ properly discounted Dr. Avera's January 2007 assessment that Plaintiff was unable to perform work activity. 20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added). *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for [his] rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *See also* 20 C.F.R. §1527(d)(2). Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those

---

[3] Plaintiff argues that the ALJ failed to consider his iron deficiency and erroneously found that "all laboratory testing was within normal limits. . . ." (Tr. 22). However, as noted by the Commissioner, the ALJ's findings were taken directly from Dr. Schumacher's treatment notes which explicitly note Plaintiff's low iron level, yet conclude that labs "were within normal limits." (*See* Tr. 258, 302).

9

conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); accord *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990) (affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).

In this case, the ALJ concluded that Dr. Avera's 2007 assessment was based on an "unquestioned acceptance of [Plaintiff's] subjective complaints of ongoing joint pain, despite a lack of objective or clinical findings supporting those subjective complaints." (Tr. 25). The ALJ also determined that Dr. Avera's 2007 opinion was inconsistent with the other substantial evidence in the case record. *Id*. In reaching these conclusions, the ALJ cited the testimony of the medical expert, Dr. Metcalf, clinical findings evidencing Plaintiff's significant improvement after his gastric bypass surgery and Plaintiff's conservative treatment history. As correctly found by the ALJ, beyond Plaintiff's gastric bypass and skin removal surgeries, he has received only conservative treatment for his impairments, despite his disabling complaints of joint pain. (Tr. 25). The ALJ also found that Plaintiff's diabetes and hypertension do not impose any functional restrictions, a finding Plaintiff does not dispute. Notably, Plaintiff does not offer any objective evidence supporting Dr. Avera's 2007 opinion, and argues only that Dr. Avera's findings are supported by Plaintiff's subjective complaints of pain. *See Cutlip*, 25 F.3d at 287 (ALJ not required to credit conclusions regarding a claimant's functional capacity that are not substantiated by objective evidence). Thus, contrary to Plaintiff's allegations, the ALJ properly discounted Dr. Avera's 2007 assessment because it was not supported by any clinical or objective findings and his functional limitations were also inconsistent with the record evidence. As such, the undersigned

finds that the ALJ reasonably declined to give controlling weight to Dr. Avera's findings and such a determination is consistent with agency regulations and controlling law.

Plaintiff further asserts that Dr. Avera's and Dr. Schumacher's treatment notes both indicate that despite his dramatic weight loss, Plaintiff's BMI remained in the range of obesity after September 29, 2006. As such, Plaintiff maintains that the ALJ failed to properly consider Plaintiff's obesity in accordance with SSR 02-1p. SSR 02-1p provides that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. Adjudicators must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.*

Here, the ALJ's decision indicates that he expressly considered SSR 02-1p and the overall impact of Plaintiff's obesity in relation to his other medical conditions. Specifically, in crediting the opinions of Dr. Metcalf and the state agency reviewing physicians, the ALJ found that "[i]nherent in their consideration was the effect of obesity on the claimant other physical impairments as required by Social Security Ruling 02-1p." (*See* Tr. 19, 22). Notably, in reviewing the medical evidence, Dr. Metcalf thoroughly considered Plaintiff's impairments, including obesity, stating "the obesity itself, although it presents a medical condition, but it doesn't add up - - there's nothing else to combine it will that would make him equal a listing." (Tr. 38). Moreover, Plaintiff does not provide any evidence or argument that his obesity resulted in any specific work-related limitations, nor does he state what additional limitations the ALJ should have imposed as a result of obesity. In light of the foregoing, the undersigned concludes that the ALJ properly evaluated and weighed the evidence of record.

*2. The ALJ's hypothetical to the VE accurately portrayed Plaintiff's Impairments*

For his final assignment error, Plaintiff argues the ALJ erred by relying on an improper hypothetical question to the VE. As a result, Plaintiff asserts the VE's response to the hypothetical does not constitute substantial evidence of Plaintiff's vocational limitations. In response to questioning by Plaintiff's counsel, the VE testified that an individual that missed four days of work per month would be unable to maintain employment. (Tr. 55-56). However, such a limitation was based on Dr. Avera's 2007 assessment wherein she found that Plaintiff would miss more than four days of work per month due to his impairments. (Tr. 307).

The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's *credible* limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). As outlined above, the ALJ reasonably determined that Dr. Avera's 2007 assessment was not supported by objective evidence or clinical findings and therefore not entitled to deference. Thus, the ALJ's failure to rely on VE testimony based on Dr. Avera's findings was not erroneous. Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of his ability to perform work as supported by the evidence. The VE's testimony in response - setting forth the many numbers of jobs that plaintiff can still perform - thus constitutes substantial evidence that Plaintiff is not disabled. *See Hammond v. Apfel*, No. 99-1451, 2000 WL 420680, at *8 (6th Cir. Apr. 12, 2000).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TRENT RODGERS,                                              Case No. 1:11-cv-21

        Plaintiff,                                      Spiegel, J.
                                                                Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).